**[ECF Nos. 136, 140]**

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **MARYANNE KLEMMER,** | |
| **Plaintiff,** | **Civil No. 22-7363 (KMW)(EAP)** |
| **v.** | |
| **MGM RESORTS INTERNATIONAL, INC., et al.,** | |
| **Defendants.** | |

## MEMORANDUM ORDER

This matter having come before the Court by way of Plaintiff's Motion to Quash Subpoena to Verizon and for Sanctions, ECF No. 136; and Defendant MGM Resorts International, Inc. ("MGM") having filed a response in opposition and Cross-Motion Directing Issuance of Its Revised Subpoena, ECF No. 140; and Plaintiff having filed an Amended Reply Brief and Opposition to MGM's Cross-Motion, ECF No. 157; and the parties having provided supplemental evidentiary submissions, ECF Nos. 162, 163, 164; and the Court having considered all of the parties' submissions; and for good cause shown, the Court finds the following:

## FACTUAL BACKGROUND

1.      Plaintiff Maryanne Klemmer filed this employment action against her former employer, MGM Resorts International, Inc. ("MGM"), as well as MGM's contractor, Mitchell International and its contract physician Dr. Betty Liu, alleging a host of torts and civil rights violations arising out of her refusal to take a COVID-19 vaccine. *See* ECF No. 66 ("Am. Compl."). The following facts are taken from the Amended Complaint. *See id.*

2.      Plaintiff alleges that she "has a long and complicated history" of allergic reactions "to a wide range of pharmaceuticals." *Id.* ¶ 8.  According to her Amended Complaint, Plaintiff experienced allergic reactions to penicillin in 1968, Augmentin in 1988, Ceclor in the early 1990s, an influenza vaccine in 2003, a cortisone injection in 2013, and an influenza vaccine in 2017.[1]  *Id.* ¶¶ 9-19.

3.      In February 2021, Plaintiff claims that she asked her primary care physician if she should receive a COVID-19 vaccine, and he advised her that "it was contraindicated for her and that she should not receive any of them." *Id.* ¶ 22.

4.      In April 2015, Plaintiff was hired as a casino floor supervisor at the Borgata Casino, Atlantic City, New Jersey.  *Id.* ¶¶ 23-24.  In 2016, Defendant MGM acquired the Borgata.  *Id.* ¶ 24.

5.      When the COVID pandemic began in March 2020, the Borgata closed, and Plaintiff was temporarily laid off.  *Id.* ¶ 27.  As casinos began to reopen, Plaintiff reached out to the Borgata to seek re-employment.  *Id.* ¶ 28.  James Bruno, the vice-president of table games, told Plaintiff "they were bringing people back in a specific order and that she would be called when they were ready to bring her back." *Id.* ¶ 28.

6.      While waiting for the Borgata's call, in February 2021, Plaintiff began working part-time for the Ocean Casino at a lower rate of pay and fewer benefits.  *Id.* ¶ 29.

7.      On October 20, 2021, the Borgata called Plaintiff to tell her that it was ready to bring her back as an employee.  *Id.* ¶ 30.  Plaintiff "immediately accepted and was scheduled to come in for 'processing' on October 26, 2021 and orientation on November 1, 2021." *Id.* ¶ 31.  On October 22, 2021, Plaintiff resigned from her position at Ocean Casino.  *Id.* ¶ 32.

---

[1]  During one of Plaintiff's hospital stays, she also learned she was allergic to latex and the contrast dye used for MRIs.  Am. Compl. ¶ 18.

8.      When Plaintiff returned to the Borgata for processing on October 26, 2021, she was required to complete various paperwork. *Id.* ¶¶ 33-35. At that time, a human resources employee requested Plaintiff's vaccine card, to which Plaintiff replied that she could not be vaccinated due to allergies. *Id.* ¶¶ 36-37. According to Plaintiff, the employee told Plaintiff to call "Mr. Bruno" to discuss the situation and directed her to leave without completing the on-boarding process. *Id.* ¶ 40.

9.      Plaintiff called Mr. Bruno that day and left a message. *Id.* ¶ 41. She received a call back from James Drew, the talent acquisition manager. *Id.* When Plaintiff explained that she could not receive the COVID-19 vaccine due to her disability, Mr. Drew responded that it was "out of [his] hands" and "in Vegas." *Id.* ¶ 42.

10.     On October 27, 2021, Graham Theriault, an MGM paralegal, emailed Plaintiff a form for her doctor to complete to support her request for an ADA accommodation. *Id.* ¶ 43. MGM gave Plaintiff fourteen days to submit her completed request. *Id.*

11.     Plaintiff immediately brought the form to Dr. Dennis Piccone, her primary care physician of forty years. *Id.* ¶ 44. Dr. Piccone completed the form, and Plaintiff submitted it to MGM on November 3, 2021. *Id.* In that form, Dr. Piccone stated that Plaintiff could not take any of the COVID-19 vaccines because of her multiple allergies and past anaphylactic reactions to various medications and injections. *Id.* ¶ 45.

12.     On November 4, 2021, at 6:30 p.m., Dana Howell, vice president and legal counsel for MGM, emailed Plaintiff and told her that MGM "'intends to submit your request for exemption from the COVID-19 vaccines (as well as the documentation you have submitted to date) to a third-party healthcare provider for review.'" *Id.* ¶ 46. The email continued that "'[i]f you would like the third-party healthcare provider who is reviewing your request to consult with your specific healthcare provider prior to arriving at a decision or position contrary to your healthcare provider's submission,'" MGM needed a signed HIPAA release by the next day. *Id.* ¶ 46. The HIPAA

authorization form required Plaintiff to allow Defendant Mitchell International, Inc. ("Mitchell") to review her medical records and information. *Id.* ¶ 47.

13.    Plaintiff alleges that she followed up regularly with MGM and her doctor to see if her request had been considered. *Id.* ¶ 50.  On November 11, 2021, Dana Howell sent Plaintiff an email indicating that an "independent medical review" had concluded that Plaintiff did not have a medical condition that is contraindicated to receiving the COVID-19 vaccines. *Id.* ¶ 52.  MGM gave Plaintiff until the end of the next day to respond and indicated that MGM would decide the matter on November 13, 2021. *Id.* ¶ 53.  Plaintiff responded that her allergist and neurosurgeon would confirm her request for accommodation but that she needed more time. *Id.* ¶ 54.

14.    The next day, Plaintiff contacted her allergist, Dr. Nicholas Romanoff, who had treated her since 2013. *Id.* ¶ 55.  She took the first possible appointment on November 15, 2021. *Id.* ¶ 56.  According to Plaintiff, Dr. Romanoff told Plaintiff that in his opinion, the COVID-19 vaccines were contraindicated for her because of her allergies and prior reactions to pharmaceuticals containing propylene ethylene glycol ("PEG"). *Id.* ¶ 57.  That same day, Dr. Romanoff submitted a letter to MGM stating that "'[i]t is medically contraindicated for Maryanne Klemmer to receive the current COVID-19 vaccines, Pfizer-BioNTech, Moderna, and J&J.'" *Id.* ¶ 58.  The letter further explained that Plaintiff endured multiple anaphylactic reactions to vaccines and medications over the years. *Id.* ¶ 59.  Dr. Romanoff's letter stated that, based on personal clinical experience and a review of the current literature, he believed the PEG component of the vaccines may trigger an anaphylactic reaction in Plaintiff. *Id.* ¶¶ 60-61.

15.    On November 19, 2021, Plaintiff received an email from Dana Howell stating that Dr. Romanoff's letter did not change the opinion of the board-certified allergy and immunology physician that Plaintiff did not have a medical condition that would prevent her from safely receiving

the COVID-19 vaccine. *Id.* ¶ 63. The letter concluded that Plaintiff did "'not meet the medical criteria for COVID-19 vaccine exemption.'" *Id.* ¶ 64.

16.     On November 23, 2021, MGM issued a formal letter denying Plaintiff's request for an ADA accommodation and informed her that to keep her position, she had to be vaccinated. *Id.* ¶¶ 65-67. When Plaintiff declined vaccination, MGM rescinded her job offer. *Id.* ¶¶ 68-69. Neither the Borgata nor MGM called Plaintiff back to work after the vaccination mandate was dropped. *Id.* ¶¶ 70-71.

17.     In January 2022, Plaintiff secured a job at the Tropicana casino as a table games floor supervisor without benefits and with a more volatile work schedule. *Id.* ¶ 74.

18.     On December 16, 2022 Plaintiff filed suit against MGM and Mitchell. *See* ECF No. 1. On May 16, 2024, Plaintiff filed an Amended Complaint, setting forth eleven causes of action: (1) failure to accommodate under the Americans with Disabilities Act ("ADA") against MGM (Count One), Am. Compl. ¶¶ 77-88; (2) violation of ADA § 12203(b) against MGM (Count Two), *id.* at ¶¶ 89-95; (3) prohibited inquires under the ADA against MGM (Count Three), *id.* at ¶¶ 96-100; (4) prohibited contracts under the ADA against MGM and Mitchell International (Count Four), *id.* ¶¶ 101-05; (5) a "regarded-as" claim under the ADA against MGM (Count Five), *id.* ¶¶ 106-08; (6) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") against MGM (Count Six_, *id.* ¶¶ 109-14; (7) discrimination under the New Jersey Law Against Discrimination ("NJLAD") against MGM (Count Seven). *id.* ¶¶ 115-17; (8) intentional infliction of emotional distress against all Defendants (Count Eight), *id.* ¶¶ 118-23; (9) civil conspiracy against all Defendants (Count Nine), *id.* ¶¶ 124-40; (10) negligent advice against Dr. Betty D. Liu and Mitchell International (Count Ten), *id.* ¶¶ 141-49; and (11) negligent infliction of emotional distress against all Defendants (Count Eleven), *id.* ¶¶ 150-51.

**Discovery Dispute**

19.     On December 3, 2024, Plaintiff filed a Motion to Quash Subpoena and for Sanctions regarding a subpoena that Defendant MGM served on Verizon seeking Plaintiff's entire phone and voicemail records from October 1, 2021, to January 31, 2022.  ECF No. 136 ("Pl.'s Mot.").

20.     In the supporting declaration, Plaintiff certified that on the evening of November 29, 2024, she received a notice in the mail from Verizon that it was in receipt of a subpoena from MGM. ECF No. 136-3, Declaration of Maryanne Klemmer ("Klemmer Decl.") ¶ 2 & Ex. A (Verizon Ltr.). The Verizon notice indicated that it intended to release her records within ten days from the date of the November 25, 2024 letter unless it received a motion to quash or for a protective order.  ECF No. 136-3, Declaration of Maryanne Klemmer ("Klemmer Decl.") ¶ 2 & Ex. A (Verizon Ltr.).

21.     Thereafter, on December 3, 2024, Plaintiff's counsel wrote to MGM's counsel to inquire whether MGM provided Plaintiff's counsel notice of the Verizon subpoena prior to it being served.  ECF No. 136-2, Declaration of Dana Wefer ("Wefer Decl.") ¶ 2.  MGM's counsel wrote back that he failed to provide notice to Plaintiff due to an "administrative oversight."  *Id.* ¶ 3.

22.     Plaintiff immediately moved to quash the subpoena on the grounds that, under Federal Rule of Civil Procedure 45, any subpoena to a non-party must first be served on "each party."  *See* Pl.'s Mot. at 1-3.  In addition, Plaintiff sought sanctions in the form of attorneys' fees based on defense counsel's alleged bad faith in serving a subpoena on a non-party without prior notice to Plaintiff.  *Id.* at 3-4.

23.     MGM opposed the Motion to Quash, explaining that although MGM's counsel originally believed that Plaintiff had been served with the Verizon subpoena, counsel later learned that such service had not occurred.  ECF No. 140-2, Declaration of Martin Aron ("Aron Decl.") ¶¶ 7-8.  As such, on December 9, 2024, MGM withdrew the subpoena by submitting a letter via fax

6

and overnight mail to Verizon.  *Id.* ¶ 8 & Ex. F (Aron Ltr. to Verizon).  No documents were produced pursuant to that subpoena.  *Id.* ¶ 9.

24.    Given MGM's continued belief that Plaintiff's Verizon phone records remained highly relevant to whether Plaintiff participated in or abandoned the ADA interactive process, MGM's counsel conferred with Plaintiff's counsel regarding a narrowed subpoena to Verizon.  Plaintiff's counsel declined, stating that the information was "cumulative."  *Id.* ¶¶ 4, 11, 12, 16, 17.

25.    Thereafter, on December 23, 2024, along with its response to Plaintiff's Motion to Quash, MGM cross-moved for an order directing the issuance of a revised subpoena seeking Plaintiff's call and voicemail records, for the period of October 1, 2021, through January 31, 2022, between Plaintiff's two identified telephone numbers and (a) Graham Theriault of MGM; (b) Dana Howell of MGM at her office number or cell number; and (c) James Drew of Borgata.  ECF No. 140 ("MGM's Cross-Mot."); Aron Decl. ¶ 18 & Exs. H, I.

26.    Plaintiff responded to the Cross-Motion, claiming that she had produced multiple emails after the denial of her accommodation showing her engagement in the interactive process and that the phone records are duplicative.  ECF No. 157 ("Pl.'s Reply") at 6-7.[2]

27.    The Court then ordered the parties to produce both a voicemail and certain e-mails that were referenced in the parties' briefing.  *See* ECF No. 161 (Order).  The parties did so on February 5, 2025.

---

[2]    Plaintiff originally filed a response to the Motion to Compel on December 30, 2024, relying heavily on a portion of Dana Howell's deposition transcript.  *See* ECF No. 141.  Upon receiving Howell's errata sheet, however, Plaintiff requested leave to file an amended reply, noting that Howell substantively changed her testimony in the interim.  *See* ECF No. 150.  The Court considers only the amended reply brief.

## DISCUSSION

Plaintiff's Motion to Quash and for Sanctions

28.    The first issue before the Court concerns Plaintiff's Motion to Quash the subpoena to Verizon and for sanctions based on MGM's failure to provide notice of the subpoena prior to serving it on Verizon.

29.    Plaintiff is correct that MGM's failure to provide notice violated Federal Rule of Civil Procedure 45(a)(4) (requiring that notice be given to a party of a Rule 45 subpoena). As noted above, however, MGM has since withdrawn this subpoena, meaning that there is no pending subpoena to quash. Accordingly, Plaintiff's Motion to Quash will be denied as moot.

30.    With respect to Plaintiff's request for sanctions in the form of attorneys' fees incurred in filing the Motion to Quash, the Court finds no basis for imposing sanctions. Courts possess certain powers inherent in their authority to administer justice in the cases before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "Because of their potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44 (citation omitted). The United States Supreme Court has held that a court may impose a monetary sanction, pursuant to its inherent powers, only upon a finding of "bad faith." *Id.* at 45-46. In *Chambers*, the Supreme Court stated that "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Id.* (cleaned up); *see also Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995) ("Usually, the inherent power that a district court retains to sanction attorneys also requires bad faith." (citation omitted)). "When the powers are invoked to impose sanctions on attorneys for unprofessional and unethical conduct, the sanctions must be carefully fashioned to remedy the

abusive conduct." *Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 161 (D.N.J. 1999) (citation omitted).[3]

31.    Here, MGM's counsel avers that the failure to provide Plaintiff notice of the Verizon subpoena was "an unintentional, administrative oversight." Aron Decl. ¶ 9. He notes that, immediately upon learning that notice was not provided, he withdrew the subpoena before Verizon produced any documents. *Id.* ¶¶ 7-9. MGM's counsel then emailed Plaintiff's counsel apologizing for the failure to provide notice and offering to meet and confer regarding any objections to the Verizon subpoena. *Id.* ¶ 11 & Ex. H.

32.    Accepting the sworn statement of MGM's counsel, the Court does not find that the oversight was in bad faith, particularly given counsel's immediate efforts to rectify the error. Further, neither MGM nor its counsel have a history of dilatoriness in this case. And aside from having to file a Motion to Quash, Plaintiff suffered no prejudice. For these reasons, Plaintiff's request for the imposition of sanctions is denied.

Defendant MGM's Cross-Motion to Compel Issuance of the Subpoena

33.    MGM cross-moves for an order directing issuance of a revised subpoena to Verizon "narrowly tailored to seek information regarding only telephone calls between Plaintiff and three individuals—two MGM employees and one Borgata employee"—who Plaintiff testified that she contacted by telephone after her request for an exemption had been denied. MGM's Cross-Mot. at 2. In particular, MGM points to the following testimony from Plaintiff:

> Q.    Did you call Miss Howell after you received [the denial of accommodation] letter to find out what alternate positions might be available which you could work remote?

_____

[3] Plaintiff cites several cases in support of her request for sanctions. As the imposition of sanctions is a highly "fact-intensive" inquiry, *see Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 210 (3d Cir. 2019), and because the cited cases are all factually distinguishable in their findings of bad faith, the Court need not address them.

A.      I called Miss Howell, and I called Jim Drew.

. . . .

Q.      I thought you testified earlier today that you never spoke to Miss Howell by phone, and that you only communicated with her by email.  Was that not correct?

A.      It's correct.  But I called this number, Miss Howell's number.  I believe I left a message.  And then I called Mr. Drew because I got this letter.

. . . .

A.      After I got this letter, it said please don't hesitate to contact me.  So, I called her and said I don't know what positions would be there.  You know, I got the remote, you could work remote.  I mean, I'm in gaming, how am I working remotely?  So, I just sent the letter and said I'm—I mean, not—excuse me.  I left her a voice mail saying that I need to know what options I could have to be remote when I'm in gaming.  And I never got an answer back from her, from the message.  But I did call Mr. Drew, Jim Drew, and addressed the letter.  And he called—he sent me an e-mail saying—and I e-mailed him, also.  And he sent me an e-mail.  I said, I have experience in online gaming.  And could I get an online gaming thing, or something.  And he gave me options of, like, Draft Kings and—it wasn't with MGM.

. . . .

Q.      Well, if [Ms. Howell] didn't return your call, how come you didn't send her an e-mail?

A.      I'm sure I have an e-mail.

Q.      I'm going to make sure that you produce that in this litigation.

A.      And there may have been she was on a leave, or something.  And I was calling Greg Theriault and Jim Drew.  Still thought that I was communicating with HR, and I was really communicating with legal.

Aron Decl., Ex. C, Deposition of Maryanne Klemmer at 157:6-160:15.

34.     MGM contends that Plaintiff has failed to produce any documents supporting her contention that she contacted either Howell or Drew after the denial of her exemption request.

MGM Cross-Mot. at 9.  MGM claims that Plaintiff's phone records for the period following the denial letter will go directly to whether Plaintiff engaged in or abandoned the interactive process required under the ADA.  *Id.*

35.    Plaintiff responds that the evidence demonstrates that after receipt of the denial of accommodation letter, she continued to engage in the interactive process with MGM, to no avail. Pl.'s Reply, at 6-7.  First, Plaintiff asserts that on the evening she received the denial of accommodation letter, she emailed Ms. Howell seeking clarification of the reasons behind MGM's decision.  *Id.* at 6.  Howell admitted that she did not respond to that email.  Supplemental Declaration of Dana Wefer ("Wefer Supp. Decl.") Ex. C, Deposition of Dana Howell 150:9-151:23.  Second, Plaintiff notes that, on December 7, 2021, she emailed James Drew at the Borgata, inquiring about a remote work possibility mentioned by Howell in her denial of accommodation letter.  Pl.'s Reply at 6; ECF No. 162 ("Pl.'s Supp. Ltr.") at KLE-15.  In that email, Plaintiff specifically stated that she "look[s] forward to a dialogue about any possible remote positions."  *Id.*  Drew simply responded that Plaintiff could look on the Borgata jobs website or inquire into gaming companies such as BetMGM, Draft Kings, and Revolution Gaming, but he did not point her to any specific positions. *Id.*

36.    Upon review of the parties' submissions, the Court finds that Plaintiff's phone records are not so critical to her participation in or abandonment of the interactive process.  Under the ADA, "[o]nce an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.  The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability."  29 C.F.R. pt. 1630, app; *see also Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330 (3d Cir. 2003). Notably, "neither party should be able to cause a breakdown in the process for the purpose of either

avoiding or inflicting liability.  Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Taylor v. Phoenixville Sch. Dist.*, 184 F.2d 296, 312 (3d Cir. 1999) (quotation omitted).  "'The last act in the interactive process is not always the cause of a breakdown, . . . and courts must examine the process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown.'" *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 507 (3d Cir. 2010) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)).

37.    Here, assuming for purposes of this Motion that Plaintiff's phone records show that she never placed calls to anyone at the Borgata or MGM, Plaintiff's emails reflect that she made continued efforts to retain her offer of employment at the Borgata only to be met with silence as to available remote positions within the company.  Thus, on the record before the Court, Plaintiff's confidential phone records—all of which will show only the fact of, and not the substance of any phone calls—are not highly relevant to a determination as to whether Plaintiff abandoned the interactive process.  *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d at 808  ("It is not an employee's responsibility . . . to repeatedly prod a reticent employer . . . . [The employer] cannot avoid liability by contending that [plaintiff] should have tried harder to force it out of its reluctant posture."); *Tafolla v. Hellig*, 80 F.4th 111, 124 (2d Cir. 2023) (same).

38.    Nonetheless, the Court remains cognizant that the voicemail records may be relevant for impeachment purposes.  Plaintiff definitively testified that she called Dana Howell and left her a voicemail sometime after Plaintiff received MGM's November 23, 2021 denial of accommodation letter and sometime before she emailed Jim Drew on December 27, 2021.  Should Plaintiff's phone records reveal otherwise, Defendants might be able to use that information to impeach Plaintiff's

testimony.[4]  For this reason, the Court will order the issuance of a narrowly tailored subpoena for this limited purpose.

IT IS this 19th day of February 2025,

ORDERED that Plaintiff's Motion to Quash and for Sanctions is DENIED; and it is further

ORDERED that MGM's Cross-Motion Directing Issuance of its Revised Subpoena is GRANTED IN PART and DENIED IN PART as follows:

a.  Within seven (7) days from the date this Order is filed, MGM shall serve upon Verizon a revised subpoena compelling production of all outgoing calls and voicemail records from November 23, 2021, to December 7, 2021, for (i) the Verizon numbers 609-822-4293 and 901-229-0294 held by Maryanne Klemmer to (ii) Dana Howell at 702-692-1937 (office) and 702-487-2274 (cell).  MGM shall serve a copy of this subpoena on Plaintiff's counsel.

b.  The subpoena shall direct that the produced records should include the date of any call and the length of the call.  In addition, the subpoena shall provide that the records shall be produced to the Law Offices of Dana Wefer, LLC.

c.  Within five (5) days from receipt of those records from Verizon, Plaintiff's counsel shall review them, redact any confidential information, and produce them to MGM's counsel with a privilege log, if necessary.

d.  Should MGM dispute any of Plaintiff's confidentiality designations, it may seek the Court's *in camera review* of the challenged records.

---

[4]  MGM also seeks phone records regarding Plaintiff's phone calls to Jim Drew and Greg Theriault.  As Plaintiff is less definitive regarding when she made those calls or the nature of the discussions, the Court finds that production of phone records to those individuals would be more unduly burdensome than probative.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Karen M. Williams, U.S.D.J.