**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISCTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MARYANNE KLEMMER, | Civil Action |
| *Plaintiff*, | No. 1:22-cv-07363-KMW-EAP |
| v. | **OPINION** |
| MGM RESORTS INTERNATIONAL, *et al.*, | |
| *Defendants*. | |

APPEARANCES:

Dana Wefer, Esquire
Law Offices of Dana Wefer
P.O. Box 374
290 Hackensack Street
Wood-Ridge, NJ 07075
    *Counsel for Plaintiff Maryanne Klemmer*


Michelle Molinaro Burke, Esquire
Maxine J. Nicholas, Esquire
Gordon Rees Scully Mansukhani, LLP
290 W. Mt. Pleasant Avenue
Livingston, NJ 07039
    *Counsel for Defendants Mitchell International, Inc. and Dr. Betty D. Liu*


Martin W. Aron, Esquire
Kurt J. Ferdenzi, Esquire
Jackson Lewis P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
    *Counsel for Defendant MGM Resorts International, Inc.*

**WILLIAMS, District Judge:**

## I.     INTRODUCTION

This matter comes before the Court by way of the Motions to Dismiss filed by Defendant Dr. Betty D. Liu ("Dr. Liu") (ECF No. 75) and Defendant Mitchell International, Inc. ("Mitchell," together with Dr. Liu, the "Independent Medical Review ('IMR') Defendants") (ECF No. 76). Plaintiff Maryanne Klemmer ("Plaintiff") opposed both motions, and IMR Defendants replied. The Court held oral argument on March 11, 2025, to address the arguments presented in the Motions and the related pleadings. For the reasons that follow, IMR Defendants' Motions to Dismiss (ECF Nos. 75, 76) are **GRANTED**, and Counts IV, VIII, IX, X, and XI of the Amended Complaint are **DISMISSED with prejudice** as to Dr. Liu and Mitchell.

## II.     BACKGROUND

### a.     Factual Background

The Court derives the facts from Plaintiff's Amended Complaint and accepts same as true for purposes of the instant motions. Plaintiff is a 68-year-old woman who has worked in Atlantic City casinos as a floor supervisor since 1979. (Amended Complaint ("Am. Compl."), ¶ 23.) She is licensed by the State of New Jersey to supervise casino games. (*Id.*) When the COVID-19 pandemic began, Plaintiff was working at the Borgata Casino and Hotel, which is owned by Defendant MGM Resorts International ("MGM"). (*Id.*, ¶ 26.) In March 2020, Plaintiff was temporarily laid off when the casino closed due to the pandemic. (*Id.*, ¶ 27.) On October 20, 2021, MGM contacted Plaintiff to re-hire her. (*Id.*, ¶ 30.) Plaintiff accepted MGM's offer and resigned from her position at another casino to take the job at the Borgata. (*Id.*, ¶ 32.)

MGM scheduled Plaintiff to come in for pre-employment processing on October 26, 2021 and orientation on November 1, 2021. (*Id.*, ¶ 31.) Upon reporting for her processing, Plaintiff

learned that MGM implemented a COVID-19 vaccine mandate. (*Id.*, ¶ 38.) Plaintiff requested MGM provide her an accommodation. (*Id.*, ¶ 43.) MGM provided her with an accommodation request form for her doctor to complete. (*Id.*) Plaintiff's physician of 40 years filled out the form, alerting MGM of his medical opinion that Plaintiff's medical history made it unsafe for her to receive any of the then-authorized vaccines. (*Id.*, ¶ 44; see Declaration of Mary Moore ("Moore Decl."), Ex. H, ECF No. 78.)

On November 4, Dana Howell, vice-president and legal counsel for MGM, sent Plaintiff an email stating that MGM "intends to submit your request for exemption from the COVID-19 vaccine (as well as the documentation you have submitted to date) to a third-party healthcare provider for review." (*Id.*, ¶ 46; *see* Moore Decl., Ex. G.)) The email informed Plaintiff that "[i]f you would like the third-party healthcare provider who is reviewing your request to consult with your specific healthcare provider prior to arriving at a decision or position contrary to your healthcare provider's submission," Plaintiff had to sign a pre-filled HIPAA release. (*Id.*, ¶ 46; *see* Moore Decl., Ex. F.)) The form required Plaintiff to permit Mitchell to receive and review her confidential medical records and information. (Am. Compl., ¶ 47.) Specifically, the form required Plaintiff to agree to the following statement: "I understand that it is possible that information used or disclosed with my permission may be redisclosed by the recipient and is no longer protected by the HIPAA Privacy Standards." (*Id.*)

On November 11, after submitting her request for accommodation and signing the proffered HIPAA authorization, Plaintiff received an email from Dana Howell stating that "an independent medical review" had decided that Plaintiff did not have a "contraindication" to the COVID-19 vaccines. (*Id.*, ¶¶ 51-52; *see* Wefer Decl., Ex. A.)) Plaintiff was given until the end of the following day to respond and was told that MGM would reach a decision by November 13,

2021. (Am. Compl., ¶ 53.) Plaintiff wrote back that her allergist would confirm her allergies and support her request for an accommodation, but that she could not reach them on such short notice and requested more time. (*Id.*, ¶ 54.)

On November 15, Plaintiff's allergy and immunology doctor, Dr. Nicholas Romanoff, submitted a letter to MGM opining that "[i]t is medically contraindicated for [Plaintiff] to receive the current COVID-19 vaccines, PfizerBioNTech, Moderna, and J&J." (*Id.*, ¶ 58; *see* Moore Decl., Ex. I, ECF No. 77.)) The next day, Plaintiff received another email from an MGM representative telling her that MGM intended to send her medical information to a "third party" and that Plaintiff had to sign another HIPAA waiver if she wanted MGM's "third party" to speak with her doctor before issuing an opinion contrary to her doctor's opinion. (Am. Compl., ¶ 62; *see also* Wefer Decl., Ex. B.)) Plaintiff returned the form, allegedly feeling coerced and that she had no choice. (Am. Compl., ¶ 62.)

On November 19, 2021, Plaintiff received an email from Dana Howell stating that a "medical doctor that is Board Certified in Allergy and Immunology has not changed their opinion"; that the third-party doctor "has indicated that [Plaintiff] do[es] not have a medical condition that is contraindicated to receiving the vaccination against COVID-19"; and that she could "safely receive" all of the vaccines, in the anonymous doctor's opinion. (*Id.*, ¶ 63; *see* Wefer Decl., Ex. C.)) Plaintiff decided to continue to follow her doctors' advice over that of MGM's "third-party specialist," Dr. Liu. (Am. Compl., ¶ 63.) With her accommodation request denied, Plaintiff attempted to return to the casino that she had resigned from to work at MGM, but the casino would not take her back. (*Id.*, ¶ 72.)

As Plaintiff later learned through discovery, Mitchell and MGM had entered a contract whereby they agreed that MGM would send its employees requests for exemption from the

COVID-19 vaccine mandate to Mitchell, and Mitchell would perform "Independent Medical Reviews" based on inquiries posed by MGM. (*Id.*, ¶¶ 101-105; *see also* Moore Decl., Ex. D.) Pursuant to the contract, MGM was to provide Mitchell with "all information considered by any Client Policy . . . including (a) employee medical records, (b) attending health care professional's recommendation, [and] (c) reports from appropriate healthcare professionals." (Moore Decl., Ex. D.) MGM requested that Mitchell answer specific questions about Plaintiff as part of its report. Specifically, MGM requested that Mitchell opine on:

1. Whether Plaintiff had "a physical or mental condition that precludes [her] from receiving one of the COVID-19 vaccines?"

2. Whether there was "a COVID-19 vaccine currently approved that [she] could safely receive?"

3. "Does [she] have a medical or health condition that is contraindicated to receiving one of the COVID-19 vaccines currently approved . . . ?"

4. "Did the healthcare provider . . . conduct testing or otherwise receive medical verification that the patient has an allergy such that it would be contraindicated for the patient to receive one of the COVID-19 [vaccines]?"

5. "Does the employee meet medical criteria for a COVID-19 vaccine exemption?"

(Moore Decl., Exs. H and K.)

Dr. Liu worked as a third-party contractor for Mitchell from her office in California, where she is a resident and practices medicine. (*See* Affidavit of Betty D. Liu, M.D. ("Dr. Liu Aff."), Ex. B.) Mitchell is a Delaware corporation with its principal place of business in California. (*See* Dr. Liu's Mot. Br. at 3, ECF No. 75-1.) Dr. Liu worked with Mitchell representatives located in its Florida office. (*Id.*) In conducting her evaluation, Dr. Liu called Plaintiff's physicians, who are located in New Jersey. (Moore Decl., H and K; *see* Pl.'s Br. at 15.) Dr. Liu opined that Plaintiff did

not have a condition that precluded vaccination and that she could safely receive any of the vaccines, that she did not have a contraindication to receiving a vaccine, that no testing had been done on her, and that she did not meet criteria for an exemption. (Moore Decl., H and K.) Dr. Liu reached her conclusion without examining or speaking with Plaintiff. (Am. Compl., ¶ 7.)

Plaintiff alleges that the actions of MGM, Mitchell, and Dr. Liu, individually and in concert with each other, caused Plaintiff severe mental anguish, sleepless nights, nightmares, anxiety, fatigue, loss of appetite, loss of weight, and flashbacks to prior allergic reactions, among other symptoms. (*Id.*, ¶¶ 76, 151.) Plaintiff asserts that her physical, mental, and emotional well-being has deteriorated and that her doctor has diagnosed her with anxiety and prescribed anti-anxiety medication to help her cope with the mental, emotional, and physical effects of Defendants' alleged discrimination and outrageous treatment toward her. (*Id.*, ¶ 76.)

### b.  **Plaintiff's Amended Complaint**

Plaintiff's Amended Complaint asserts the following causes of action against the IMR Defendants: Count IV for "Prohibited Contract in Violation of the ADA" (against Mitchell and MGM); Count VIII for "Intentional Infliction of Emotional Distress" (against all Defendants); Count IX for "Civil Conspiracy" (against all Defendants); Count X for "Negligent Advice" (against IMR Defendants); Count XI for "Negligent Infliction of Emotional Distress" (against all Defendants).[1] (ECF No. 66.)

---

[1] In her opposition brief and on the record, Plaintiff consented to the dismissal of her negligent infliction of emotional distress claim (Count XI) with prejudice. (*See* Pl.'s Br. at 14.) The Court notes that following oral argument, counsel for IMR Defendants submitted a letter dated March 20, 2025, which asserted that Count XI was inadvertently omitted from the dismissed counts. (ECF No. 197.) That letter appears to overlook the Court's March 18, 2025 Order providing that "Count XI of Plaintiff's Amended Complaint (ECF No. 66) is DISMISSED with prejudice," (ECF No. 195).

III.    **LEGAL STANDARD**

### A.  Motion to Dismiss 12(b)(2)

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing, by a preponderance of the evidence, sufficient facts to show that jurisdiction exists. *See Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2001); *Weber v. Jolly Hotels*, 977 F. Supp. 327, 331 (D.N.J. 1997). "[I]t is well established that in deciding a motion to dismiss for lack of [personal] jurisdiction, a court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of the plaintiff." *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 330 (3d Cir. 2009) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). The plaintiff "need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Nevertheless, "at no point may a plaintiff rely on the bare pleadings alone" to withstand a motion to dismiss for lack of personal jurisdiction—"[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Time Share Vacation Club*, 735 F.2d at 66.[2]

### B.  Motion to Dismiss (12)(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual

---

[2] "Courts may rely upon matters outside the pleadings to determine jurisdictional facts." *See DiSantis v. Allied Constr., LLC*, No. 17-11379, 2018 WL 3647210, at *3 (D.N.J. July 31, 2018).

allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id*. (quoting *Twombly*, 555 U.S. at 557).

Generally, a district court may consider; allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, a court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint

are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt*, 770 F.3d at 249.

## IV.    DISCUSSION

### a.    Personal Jurisdiction

A district court must undertake a two-step inquiry to assess whether it has personal jurisdiction over a defendant. First, the court analyzes whether the state's long arm statute permits the exercise of personal jurisdiction. *See Miller Yacht Sales, Inc.*, 384 F.3d at 96 ("A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law."); Fed. R. Civ. P. 4(k). "Second, the court must apply the principles of due process." *WorldScape, Inc. v. Sails Capital Mgmt.*, Civ. 10–4207, 2011 WL 3444218 (D.N.J. Aug.5, 2011) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)). "In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc.*, 155 F.3d at 259.

"Personal jurisdiction under the Due Process Clause depends upon 'the relationship among the defendant, the forum, and the litigation.'" *IMO Indus., Inc.*, 155 F.3d at 259 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction, only the latter of which is implicated in this case."[3] *Warner v. Warner*, No. 23-3334-KMW-MJS, 2024 WL 1198112, at *2 n.4 (D.N.J. Mar. 20, 2024) (citing *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009)). The exercise of personal jurisdiction over a non-resident defendant is proper if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. &*

---

[3] Dr. Liu resides and practices medicine in California and has no physical presence in New Jersey. (Dr. Liu Aff., Ex. B.) Thus, this Court lacks general jurisdiction over Dr. Liu. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

*Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "Instead, the plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.*

"The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists: (1) 'the defendant must have purposefully directed [its] activities at the forum'; (2) 'the litigation must arise out of or relate to at least one of those activities'; and (3) if the first two requirements are met, the exercise of jurisdiction must 'otherwise comport[ ] with fair play and substantial justice.'" *E. Concrete Materials, Inc. v. Jamer Materials Ltd.*, 2019 WL 6734511, at *2 (D.N.J. Oct. 25, 2019), *R & R adopted*, No. 19-9032, 2019 WL 6726476 (D.N.J. Dec. 10, 2019) (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007)).

While questions of personal jurisdiction must be resolved before the Court can address the merits of a 12(b)(6) motion in a one-defendant case, in matters such as this involving another defendant over which the Court's jurisdiction is not in dispute, the Court may address the merits to the extent they overlap. *See Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214 (D.N.J. 2020).

Here, Dr. Liu's relevant contacts to New Jersey are limited to her work as a third-party contractor for Mitchell to conduct an independent medical review of Plaintiff's request for a reasonable accommodation. The alleged tortious conduct by Dr. Liu is her provision of what Plaintiff contends is a negligent medical opinion. But there is no dispute that Dr. Liu rendered her opinion from California, where she is a resident and practices medicine. (*See* Dr. Liu Aff., Ex. B.)

By Plaintiff's own admission, Dr. Liu never examined or interacted directly with Plaintiff, in person or virtually. (Am. Compl., ¶ 7.) Nor does Plaintiff dispute that Mitchell, the party with whom Dr. Liu contracted, is a Delaware corporation with its principal place of business in California. (*See* Dr. Liu's Mot. Br. at 3.)

Plaintiff asserts that Dr. Liu's limited communications with her doctors in New Jersey and knowledge that Plaintiff is a New Jersey resident are sufficient to subject her to this Court's personal jurisdiction. (Pl.'s Br. at 5-6.) The Court finds that such attenuated contacts are insufficient. Nothing in the record suggests that Dr. Liu's interactions with Plaintiff's New Jersey doctors reflected her intention to purposely avail herself of the privilege of doing business in New Jersey. *See IMO Indus., Inc.*, 155 F.3d at 259. Rather, Dr. Liu's contact with Plaintiff's doctors was incidental to her contract with Mitchell and the fact that Plaintiff's doctors were located in New Jersey.

Accordingly, the Court finds that Plaintiff has failed to satisfy her burden of demonstrating that Dr. Liu is subject to this Court's general or specific personal jurisdiction and dismisses Plaintiff's claims against Dr. Liu pursuant to Fed. R. Civ. P. 12(b)(2). Because the claims against Mitchell must be addressed in connection with Mitchell's 12(b)(6) motion, the Court will further address the merits of Plaintiff's arguments against Dr. Liu to the extent they dovetail with Plaintiff's claims against Mitchell. *See Murphy*, 503 F. Supp. 3d at 214.

### b.  **Plaintiff's ADA Claim Against Mitchell**

Plaintiff brings Count IV against Mitchell and MGM for "Prohibited Contracts," which Plaintiff alleges violated the ADA because it involved MGM's unlawful disclosure of Plaintiff's confidential medical records. (Am. Compl., ¶¶ 101-105.) The ADA, 42 U.S.C. § 12112, states in pertinent part:

> **(a) General rule** No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Section 12112 further prohibits covered entities from entering into certain contracts that violate the ADA, stating:

> **(b) Construction** As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes--
> . . . .
>
> **(2)** participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs); . . . .

In this context, the term "covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The term "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The Third Circuit has noted that "[t]he ADA also has specific provisions, . . . regarding the propriety of employer-mandated medical examinations." *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 514 (3d Cir. 2001). Under Title I, employers are generally required to treat an employee's medical information as "confidential" when the employer requires the employee to submit to a medical exam. *See* 42 U.S.C. § 12112(d)(3) and (4). "The Act expressly allows examinations or inquiries as to whether an employee has a disability or as to the severity of a disability, if such examinations/inquiries are job-related and consistent with business necessity." *Tice*, 247 F.3d at

12

514 (citing 42 U.S.C. § 12112(d)(4)(A)). "The Act also explicitly permits 'inquiries' (but not examinations) as to an employee's ability to 'perform job-related functions.'" (*Id.* (citing 42 U.S.C. § 12112(d)(4)(B)). "However, the Act is unclear as to whether *examinations* (rather than inquiries) are permissible if intended to evaluate the employee's ability to perform job-related functions, even if such examinations are *not* intended to discover whether an employee is "disabled" within the meaning of the Act, as permitted in § 12112(d)(4)(A)." *Id.* The Third Circuit has concluded that "there is no indication in either the text of the ADA or in its history that a technical violation of § 12112(d) [absent a showing of actual harm resulting from the disclosure], was intended to give rise to damages liability." *Id.* at 520. Thus, to state a claim for violation of the ADA's confidentiality provisions, a plaintiff must allege that: (1) her employer obtained medical information through employment-related medical examinations or inquiries, § 12112(d); (2) the information obtained by the employer was not treated as a confidential medical record (unless that information falls under one of the exceptions found in 42 U.S.C. § 12112(d)(3)(B)(i), (ii), (iii) for managers, first aid personnel, and government officials); and (3) she suffered a demonstrable injury-in-fact because of the disclosure. *See Tice*, 247 F.3d at 519-20.[4]

In *Conneen v. MBNA Am. Bank, N.A.*, the plaintiff argued that her employer breached "its duty of confidentiality under the ADA when [her employer] contacted [a third-party physician] during the EEOC conciliation without her consent." *Conneen v. MBNA Am. Bank, N.A.*, 182 F. Supp. 2d 370, 381 (D. Del. 2002), *aff'd*, 334 F.3d 318 (3d Cir. 2003) ("*Coneen*"). The district court found that argument was "without merit" because "although the ADA does state that certain medical information obtained *at the request* of the employer must be kept confidential, *see* 42 U.S.C. § 12112(d), [the plaintiff] was not an employee of [the defendant who allegedly breached

---

[4] *See also Sheets v. Interra Credit Union*, 2016 WL 362366 (N.D. Ind. Jan. 29, 2016), *aff'd by Sheets v. Interra Credit Union*, 671 Fed.App'x 393 (7th Cir. 2016).

the confidentiality provision] at the time the information was sought, so these provisions are inapplicable." *Id.* at 381; *see also Sheriff v. State Farm Ins. Co.*, No. 3:12-CV-243, 2013 WL 4084081, at *8 (W.D. Pa. Aug. 13, 2013) ("*Sheriff*") (citing *Conneen*) ("After considering the plain language, purpose, and structure of the statute and relevant caselaw, the Court concludes that Plaintiff may not state a claim against Defendant pursuant to 42 U.S.C. § 12112(d)(4)(C) without demonstrating that Plaintiff was an employee of the Defendant at the time the information regarding Plaintiff's medical condition or history was obtained by Defendant.").

Here, Plaintiff cites to no cases supporting her contention that Mitchell is a "covered entity" for which the ADA applies. Plaintiff's argument contradicts the plain language of 42 U.S.C. § 12111(2) and § 12112, which make clear that a violation of the ADA's record-keeping provisions may only be pursued against "covered entities," which encompasses only a prospective plaintiff's "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111.[5] Mitchell did not employ Plaintiff, is not a public entity, and is not a public accommodation as defined by the ADA. *See* 42 U.S.C. §§ 12111-12. As Plaintiff was never an employee of Mitchell, Plaintiff's cause of action alleging it violated the ADA's confidentiality provision by which Mitchell was not bound must fail as a matter of law. *See* 42 U.S.C. § 12111; *Conneen*, 182 F. Supp. 2d at 381; *Tice*, 247 F.3d at 519-20.

Moreover, even if Mitchell were a "covered entity" for ADA purposes, information that is voluntarily disclosed by an employee is not protected by § 12112(d). *See Sheriff*, 2013 WL 4084081, at *8 (citing *Cash v. Smith,* 231 F.3d 1301, 1307 (11th Cir. 2000) ("*Cash*") and *EEOC v. C.R. England, Inc.,* 644 F.3d 1028, 1047–48 (10th Cir. 2011) ("*C.R. England*"); *see also Cash*, 231 F.3d at 1307 (finding § 12112(d)(4) inapplicable where disclosure of medical information was not

---

[5] Subchapter III of the ADA also applies to "public accommodations," which are specifically defined in 42 U.S.C. § 12181. Plaintiff does not argue that Mitchell operates as a place of "public accommodation" pursuant to the ADA.

the result of a medical examination but of a voluntary disclosure made by employee to her supervisor); *EEOC*, 644 F.3d at 1047–48 (holding that information voluntarily provided to employer by employee about employee's HIV status was not protected by section 12112(d)(4) because disclosure was not the result of "any sort of examination or inquiry"); *Maude v. City of Philadelphia*, 2021 WL 2291318, at *5 (E.D. Pa. 2021) (citing *Sheriff, C.R. England* and *Cash*).

Plaintiff in her opposition argues that "42 U.S.C. §12112(b)(2) prohibits covered entities" from participating in contracts that have the effect of subjecting an employee to discrimination. Plaintiff argues for the first time in her opposition brief that while Mitchell is not liable as a covered entity, §12203(b) prohibits any entity, including Mitchell, from interfering with her ADA rights pursuant to §12112(b)(2). 42 U.S.C. § 12203(b) states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(c), in turn, states that "[t]he remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections [§ 12203] (a) and (b), with respect to subchapter I, subchapter II and subchapter III, respectively."

Because Plaintiff does not plead a violation of §12203(b) in her Amended Complaint, the Court rejects Plaintiff's attempt to amend her cause of action by way of her opposition brief. *See Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 387 (D.N.J. 2019) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, as previously noted, § 12112 expressly states that the ADA applies only to employers, public entities, and public accommodations and services operated by private entities. The provision Plaintiff cites, § 12203,

expressly cross-references subchapter I, II, and III, which make clear that the ADA applies only to covered entities. *See* 42 U.S.C. §§ 12111-12. Furthermore, Plaintiff's prohibited contracts claim is predicated on her assertion that the contract between MGM and Mitchell unlawfully required the release of her confidential medical information, but there is no dispute that Plaintiff signed a consent to voluntarily release her information. (Am. Compl., ¶¶ 46, 62); *see Sheriff*, 2013 WL 4084081, at *8; *Maude*, 2021 WL 2291318, at *5. Tellingly, Plaintiff does not cite to any cases or administrative guidelines that support her novel interpretation of §12203(b) and §12112(b)(2) as applying to non-covered entities and to an employee's voluntary disclosure of medical information, which runs contrary to the plain language of the statutes on which she relies.

Accordingly, the Court finds that 42 U.S.C. 12203(b) does not apply to Mitchell, and that Plaintiff's ADA claim against Mitchell must be dismissed with prejudice.

### c.  Negligent Advice Causing Damage

#### i.  Duty

IMR Defendants argue that Plaintiff's negligence-based claims against them must fail because they did not owe a duty of care to Plaintiff as a matter of law.

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito,* 217 N.J. 199 (2014). The existence of a duty and the scope of that duty are generally questions of law for the court to decide. *Carvalho v. Toll Bros. & Developers,* 143 N.J. 565 (1996). "[W]hether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Reed v. Bojarski,* 166 N.J. 89 (2001) (internal

quotation marks omitted). "A duty is said to arise out of the existence of a relationship between the parties such that social policy justifies its imposition." *Id.* (internal quotation marks omitted).

In *Skelcy v. UnitedHealth Grp., Inc.*, the Third Circuit held that independent medical reviewers—like Mitchell and Dr. Lui—do not owe a duty of care to the subject of the review, such as Plaintiff here. 620 F. App'x 136, 140 (3d Cir. 2015). In *Skelcy*, a doctor performed a "peer assessment review" limited to a review of the plaintiff's medical records and providing answers to questions from the plaintiff's insurance company. *Id.* at 143-44. Because the patient did not rely on the advice of the doctor to help him understand his condition or determine the appropriate course of treatment, the independent medical reviewers did not owe the plaintiff a duty of care giving rise to liability for negligence. *Id.*; *see also Nolan v. First Colony Life Ins. Co.*, 345 N.J. Super. 142 (App. Div. 2001) (holding that no duty existed in a "commercial setting" where a healthcare professional reviewed the plaintiff's blood test results but did not form a relationship of "trust or reliance" with the injured party).

Similarly, here, Mitchell—through its third-party physician, Dr. Liu—provided a limited medical review with respect to Plaintiff, in response to the question posed by MGM as to whether Plaintiff could safely receive the COVID-19 vaccine. (Am. Compl., ¶¶ 101-105; *see also* Moore Decl., Ex. D.) Like *Skelcy*, here, Plaintiff acknowledges that she did not interact with Mitchell and Dr. Liu in connection with their limited medical review (Am. Compl., ¶ 7), nor does Plaintiff allege that she formed a relationship of "trust or reliance" with them. *See Nolan*, 345 N.J. Super. at 151; *Skelcy*, 620 F. App'x at 140. Rather, Plaintiff alleges that she did not take the COVID-19 contrary to Dr. Liu's opinion that she could safely receive it.

Accordingly, IMR Defendants did not owe Plaintiff a duty as required to support Plaintiff's negligence-based claims against them as a matter of law.

###### ii.  __Elements of Misrepresentation Not Met__

IMR Defendants further argue that Plaintiff's claims against them for negligent advice causing damage must fail as a matter of law. (Mitchell's Mot. Br. at 11-12, ECF No. 76-1; Dr. Liu's Mot. Br. at 14-15, ECF No. 75-1). To plead a claim for negligent advice causing damage, a plaintiff must allege that the defendant made a false statement of fact or opinion, while purporting to exercise the skill and competency compatible with his or her profession or calling, knowing, or with reason to know, that the information is desired for a serious purpose, and intended to be relied upon, by the party in direct contractual relationship with the speaker or a known beneficiary of the speaker's undertaking. *See H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983); *see also* John J. Banan¸ Encyclopedia of New Jersey Causes of Action, § N-2 at 355 (2019 ed.).

"Recovery of economic loss, due to negligent misrepresentation by one furnishing a service, has long been permitted when there existed a direct contractual relationship between the parties or when the injured third party was a known beneficiary of the defendant's undertaking." *H. Rosenblum, Inc.*, 93 N.J. at 334–35. Such a claim is limited to "the persons to whom he owes a duty to his client, to intended identifiable beneficiaries and to any unidentified member of the intended class of beneficiaries." *See H. Rosenblum, Inc.*, 93 N.J. at 338. The doctrine is limited to circumstances where the plaintiff "relied on the statements and that the misstatements therein" were the result of negligence that proximately caused the plaintiff's injury. *See id.* "The injured party would be limited to recovery of actual losses due to reliance on the misstatement." *Id.*

Here, Plaintiff did not have a contractual relationship with Mitchell or Dr. Liu, and thus lacks standing to assert this claim against them. Plaintiff argues that she was an intended "beneficiary" of Mitchell's services but cites to no authority suggesting that she was the intended beneficiary of Dr. Liu and Mitchell's professional advice to MGM. (Am. Compl., ¶ 148.)

Moreover, Plaintiff cannot establish that she relied on Dr. Liu and Mitchell's advice to MGM that she could safely receive the COVID-19 vaccine because, whether it was right or wrong, Plaintiff did not ultimately rely on that advice and take the vaccine. *See H. Rosenblum, Inc.*, 93 N.J. at 338. To the contrary, Plaintiff alleges that she did not receive the vaccine. (*See* Am. Compl., ¶¶ 42, 156.) Indeed, Plaintiff has not alleged that Mitchell intended for Plaintiff to rely on Dr. Liu's opinion.

Accordingly, Plaintiff's claim for negligent advice causing damages must be dismissed. Because no amendment can change the underlying facts and would thus be futile, the Court will dismiss Count X with prejudice.

### d.  Intentional Infliction of Emotional Distress

Plaintiff asserts Count VIII against IMR Defendants for negligent infliction of emotional distress. Under New Jersey law, to establish a claim for intentional infliction of emotional distress, a plaintiff must prove the defendant engaged in intentional or reckless conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Delvalle v. Trino*, 474 N.J. Super. 124, 143 (App. Div. 2022); *see also Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 23 (App. Div. 2001) (referring to this element as an "elevated threshold" that is satisfied only in extreme cases). Examples of conduct sufficient to meet this elevated standard have included the following scenarios:

> (1) a county sheriff's using an atrocious racial slur to refer to an African–American employee; (2) a defendant teacher's false report that the plaintiff teacher, a practicing non-violent Buddhist, had threatened to kill her students, and arranging to have the plaintiff removed publicly from the school, allegedly in retaliation for rebuking the defendant's sexual advances; (3) a supervisor and two co-workers at a military facility surrounding the plaintiff and making comments and gestures to suggest that she was to perform a

> sexual act on the supervisor while the others watched, followed by a threatening telephone call implying that the Mafia would become involved if the plaintiff pursued the investigation; (4) a landlord's intentional shutting off heat, running water, and security in a rent-controlled building in an effort to induce the tenants to vacate; and (5) a doctor allegedly telling parents that their child was suffering from a rare disease which may be cancerous knowing that the child has nothing more than a mildly infected appendix.

> *Ingraham v. Ortho-McNeil Pharm.*, 422 N.J. Super. 12, 21 (App. Div. 2011) (internal citations omitted).

Here, the Amended Complaint alleges Mitchell and Dr. Liu received Plaintiff's medical records pursuant to Plaintiff's signed authorization, Dr. Liu reviewed these records and issued an (allegedly) incorrect medical opinion, and that MGM relied on this opinion to deny Plaintiff's request for a reasonable accommodation. (Am. Compl., ¶¶ 46, 62.) The Court finds that such conduct cannot reasonably establish the requisite conduct to maintain an IIED claim, nor that Mitchell or Dr. Liu intentionally or recklessly caused Plaintiff severe emotional distress by issuing an objective medical opinion. *See Delvalle*, 474 N.J. Super. at 143.

Accordingly, the Court dismisses Count VIII with respect to Mitchell and Dr. Liu with prejudice.

**e.  Civil Conspiracy**

Finally, IMR Defendants move to dismiss Plaintiff's civil conspiracy claim. Plaintiff alleges that the ADA-prohibited contract between Mitchell and MGM constituted an agreement to violate her ADA rights. (Am. Compl., ¶¶ 124-140.) Plaintiff further argues that a claim for civil conspiracy can survive even in the absence of an underlying tort. (Pl.'s Br. at 13-14.)

Contrary to Plaintiff's assertions, a cause of action for civil conspiracy requires not only that Plaintiff plead an underlying tort, but the tort plead must be intentional. *See McCracken v. R.J. Reynolds Tobacc*o, 821 Fed. App'x 122, 126 (3d Cir. 2020) (stating that plaintiff could not allege

a civil conspiracy claim between defendants based on his vague allegations where he failed to state an underlying intentional tort claim); *see also Jeter v. Brown & Williamson Tobacco Corp.*, 113 F. App'x 465, 469 (3d Cir. 2004) ("[B]ecause [plaintiff] failed to assert a viable claim for any of the intentional torts in his complaint, the claim for civil conspiracy must also fail.").

As previously noted, Plaintiff's causes of action for an ADA-prohibited contract and intentional infliction of emotional distress must be dismissed as a matter of law. Because there exists no underlying wrong on which to base Plaintiff's claim for civil conspiracy, the Court dismisses Count IX with prejudice.

## V.     CONCLUSION

For all the foregoing reasons, Counts IV, VIII, IX, X, and XI of the Amended Complaint are **DISMISSED with prejudice** as to Mitchell and Dr. Liu.


*Karen M. Williams*
KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE